UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

ANTHONY ZIEBRON and JAMES VRANA,
individually and on behalf of ALL OTHERS
SIMILARLY SITUATED,

        CASE NO. 09-10164

        Plaintiffs,

v

METALDYNE CORPORATION;  HEARTLAND
INDUSTRIAL PARTNERS LP;  HEARTLAND
INDUSTRIAL ASSOCIATES, L.L.C.;  GARY M.
BANKS;  CHARLES E. BECKER;  CYNTHIA HESS;
TIMOTHY D. LEULIETTE;  JEFFREY M. STAFEIL;
DAVID A. STOCKMAN;  DANIEL P. TREDWELL
and SAMUEL VALENTI, III

        Defendants.

**CLASS ACTION COMPLAINT FOR
VIOLATIONS OF FEDERAL
SECURITIES LAWS AND STATE
LAWS**

**JURY TRIAL DEMANDED**

---

R. Jay Hardin (P35458)
Matthew L. Wikander (P65160)
SMITH HAUGHEY RICE & ROEGGE
Attorneys for Plaintiffs
202 E. State St., Ste. 100
Traverse City, MI  49684
231-929-4878

---

Plaintiffs have alleged the following based upon the investigation of Plaintiffs and their counsel, which included a review of United States Securities and Exchange Commission (SEC) filings by Metaldyne Corporation ("Metaldyne" or "the company"), as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public and private statements issued by the Company and media reports about the Company, and Plaintiffs' believe that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

## NATURE OF THE ACTION

1. This is a Federal class action on behalf of purchasers of the securities of Metaldyne Corporation between January 14, 2002 to January 14, 2004, and forced sale of same in February 2007, inclusive, (the "Class"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act"). This class action also includes and is filed on behalf of holders of restricted stock awards who had their previous awards in MascoTech, Inc. cancelled and substituted for new awards, which began to vest on or about November 28, 2000, and were forced to sell their stock in February 2007 as a result of Metaldyne's acquisition by Asahi Tec Corporation. November 28, 2000 through February 2007 is the "Class Period". This case also includes supplemental state law claims against all Defendants.

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. § 78j(b) and 78t(a)) and Rule 10b(5) promulgated thereunder by the SEC [17 CFR 240.10b-5). The claims also arise under Michigan state law.

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 1337 and Section 27 of the Exchange Act (15 U.S.C. § 78aa). This Court also has supplemental jurisdiction pursuant to, and in accordance with 28 U.S.C. § 1367.

4. Venue is proper in this district pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1391(b). Many of the acts charged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District.

5. In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to the mails, interstate telephone communications and the facilities of the national securities markets.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

**PARTIES**

6.      Plaintiff Anthony Ziebron, as set forth in the accompanying certification, incorporated by reference herein and attached hereto as Exhibit A, sustained losses due to the actions of Defendants during the Class Period.  Mr. Ziebron purchased the common stock of Metaldyne at artificially inflated prices and without adequate disclosure by those who controlled Metaldyne of their conflicts of interest and self dealing.  Mr. Ziebron purchased the common stock and was forced to sell that stock during the Class Period and has been damaged thereby.  Mr. Ziebron was forced to purchase a percentage of that common stock on November 28, 2000, when the company was taken over by Defendant Heartland.

7.      Plaintiff James Vrana, as set forth in the accompanying certification, incorporated by reference herein and attached hereto as Exhibit B, sustained losses due to the actions of Defendants during the Class Period Mr. Vrana purchased the common stock of Metaldyne at artificially inflated prices and without adequate disclosure by those who controlled Metaldyne of their conflicts of interest and self dealing.  Mr. Vrana purchased the common stock and was forced to sell that stock during the Class Period and has been damaged thereby.  Mr. Vrana was forced to purchase a percentage of that common stock on November 28, 2000, when the company was taken over by Defendant Heartland.

8.      Defendant Metaldyne is a Delaware corporation with its principal place of business located at 47659 Halyard Drive, Plymouth, Michigan.  In its public filings, Metaldyne describes itself as a global manufacturer of highly engineered metal components for the global light vehicle market.

9.      Heartland Industrial Partners, L.P. ("Heartland"), is a private equity firm established for the purpose of acquiring and expanding industrial companies operating in various industrial sectors of the American manufacturing economy.  Heartland is a limited partnership organized under the laws of the state of Delaware.  Its principal place of business is located at 55 Railroad Avenue, Greenwich, Connecticut.  The managing general partner for Heartland is Heartland LLC.  Heartland, at one time, was a $1 billion private equity firm.  Defendant Stockman is the founding partner and a Senior Managing

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

-3-

Director of Heartland; Defendants Banks, Hess, Leuliette, Tredwell, and Valenti, III are/were all Senior Managing Directors of Heartland; Defendants Becker and Stafeil all have/had limited personal interests in Heartland. In November 2000, a group of investors led by Heartland acquired control of Metaldyne (then known as "MascoTech, Inc.") through a recapitalization agreement and merger. Following the merger, Heartland owned approximately 86.3% of the company. By reason of its share ownership and certain stockholder agreements, Heartland and its affiliates at all relative times effectively controlled Metaldyne and appointed a majority of the members of Metaldyne's board of directors.

10.     Heartland Industrial Associates, L.L.C. ("Heartland LLC") is a limited liability company organized under the laws of Delaware. Heartland LLC is the managing general partner of Heartland. During the Class Period one of Metaldyne's officers and certain Metaldyne directors were members of Heartland LLC, specifically Defendants Banks, Leuliette, Tredwell, Stockman, and Valenti, and Ms. Hess. In addition, Defendant Becker was a limited partner in Heartland and Defendant Stafeil was a member of a limited liability company that owned a limited partnership interest in Heartland. Unless otherwise noted, both Heartland entities will be referred to collectively as "Heartland".

11.     Defendant Gary Banks ("Banks") was, at all relevant times, a Senior Managing Director of Heartland and a Heartland designated Metaldyne director.

12.     Defendant Charles Becker ("Becker") was, at all relevant times, a limited partner in Heartland and a Heartland designated Metaldyne director (being appointed to the board in May 2002).

13.     Defendant Cynthia Hess ("Hess") is a former Senior Managing Director of Heartland and was, at all relevant times, a Heartland designated Metaldyne director.

14.     Defendant Timothy D. Leuliette ("Leuliette") was a Heartland co-founder and industrial partner and, at all relevant times, the Metaldyne's Chairman of the Board, President, and Chief Executive Officer.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

-4-

15. Defendant Jeffrey Stafeil ("Stafeil") was, at all relevant times, a member of a limited liability company that owned a limited partnership interest in Heartland and Executive Vice President and Chief Financial Officer of Metaldyne.

16. Defendant David A. Stockman ("Stockman") was a Heartland co-founder, by-out partner, and Senior Managing Director, and at all relevant times, a Heartland designated Metaldyne director.

17. Defendant Daniel P. Tredwell ("Tredwell") was a Heartland co-founder and financial partner, and at all relevant times a Heartland designated Metaldyne director.

18. Defendant Samuel Valenti, III ("Valenti"), was at all relevant times a Heartland Senior Managing Director and a Heartland designated Metaldyne director.

19. Banks, Becker, Hess, Leulieutte, Stafeil, Stockman, Tredwell, and Valenti are referred to collectively herein as the "Individual Defendants".

20. During the Class Period, the Individual Defendants were privy to confidential and proprietary information concerning Metaldyne, its operations, finances, financial condition, present and future business prospects. The Individual Defendants also had access to material adverse non-public information concerning Metaldyne as discussed in detail below. Because of their positions with Metaldyne, and in the case of the Individual Defendants, their Board positions and controlling interests in Metaldyne, the Individual Defendants had access to non-public information about Metaldyne's business, finances, products, markets, and present and future business prospects via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendant at management and board of director's meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or recklessly disregarded the fact that adverse facts and conflicts of

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

interest specified herein had not been disclosed to, and were being concealed from, Plaintiffs and other Class members.

21. Each Individual Defendant is liable as a direct participant in, and a co-conspirator with respect to the wrongs complained of herein. In addition, the Individual Defendants, by reason of their status as top senior executive officers, directors, and/or controlling shareholders, were each a "controlling person" with in the meaning of Section 20 of the Exchange Act and had the power and influence to cause the company to engage in the unlawful conduct complained of herein. Because of their positions of control, the Individual Defendants were able to and did, directly and indirectly, control the conduct of Metaldyne's business.

22. The Individual Defendants, because of their positions with the Company, controlled and/or possessed the authority to control the contents of its reports, press releases and presentations and through them, to the Plaintiffs and other Class members. The Individual Defendants were provided with copies of the Company's reports and correspondence alleged herein to be misleading, prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Thus, the Individual Defendants had the opportunity to commit the fraudulent acts alleged herein.

23. As officers and controlling persons of the company the Individual Defendants had a duty to disseminate promptly accurate and truthful information, including disclosure of all potential and actual conflicts of interest, with respect to Metaldyne's financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings, and present and future business prospects to correct any previously issued statements, or omitted facts, that had become materially misleading or untrue, so that the decision to purchase Metaldyne's common stock, when the restricted shares vested, would be based upon truthful and accurate information. The Individual Defendants'

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

24.  The Individual Defendants are liable as participates in a fraudulent scheme and course of conduct that operated as a fraud or deceit to the purchasers of Metaldyne common stock by disseminating materially false and misleading statements and/or concealing material adverse facts.  The scheme: (i) deceived the Plaintiffs and Class members regarding Metaldyne's business, operations and management and the intrinsic value of Metaldyne common stock; (ii) was intended to enable Heartland and the Individual Defendants to preserve more cash in connection with controlling Metaldyne and eventually, to sell their Metaldyne common stock for their personal gain at artificially inflated prices; (iii) caused Plaintiffs and members of the Class to purchase Metaldyne common stock at artificially inflated prices and/or to forcedly sell their common stock for substantially less than the company had projected or the $20-$25 "strike price" that had been periodically announced by the Individual Defendants since the date of Heartland's acquisition in 2000.

25.  The Individual Defendants are also liable for breaches of their fiduciary duties to Plaintiffs and other Class members because of Individual Defendants' conduct in standing on both sides of numerous transactions and deriving personal benefits through self-dealing which lead to the conversion of Plaintiffs' and other Class members' property.

## PLAINTIFFS' CLASS ACTION ALLEGATIONS

26.  Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P. 23(a) and (b)(3) on behalf of a Class, consisting of all those MascoTech, Inc. employees and former employees who purchased the securities of Metaldyne between on/about January 14, 2002 through January 14, 2004, inclusive (the "Class") and who were damaged thereby during the forced sale of those securities in February 2007.  Moreover, Plaintiffs bring this action on behalf of all MascoTech, Inc. employees and

former employees who were holders of restricted stock awards who had their awards vest on November 28, 2000 and were forced to sell their stock in February 2007 as a result of Metaldyne's acquisition by Asahi Tec Corporation. This case also includes supplemental state law claims against all Defendants. It is believed that the former Class will be a distinct sub-class of the latter (i.e. every Class member had restricted stock awards vest on November 28, 2000 and were forced to sell those shares in February 2007). Excluded from the Class are Defendants, any officers and directors of the Company at all relevant times who were aware of Defendants' conduct as alleged herein, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

27.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Metaldyne common shares were sold to, upon information and belief, over 100 employees and former employees of the Company. Moreover, over 100 employees and former employees held restricted stock which vested on November 28, 2000 and were forced to sell that stock during the Class Period. While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe that there are 100 or more individuals in the proposed Class. Record owners of the Class can be identified from records maintained by Metaldyne and may be notified of the tenancy of this action by mail, using the form of notice similar to that customarily used in securities class actions.

28.     Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal and state law that is complained of herein.

29.     Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained experienced and competent counsel in both state and federal court litigation.

30.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely effective individual members of the Class. Among the questions of law and fact common to the Class are:

    a.    Whether the federal securities laws were violated by Defendants' acts as alleged herein;

    b.    Whether statements made by Defendants to the Class during the Class Period misrepresented/omitted material facts about the business and operations of Metaldyne;

    c.    Whether the applicable state laws were violated by Defendants' acts as alleged herein; and,

    d.    To what extent the members of the Class have sustained damages and the proper measure of damages.

31.     A Class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## BACKGROUND

32.     The Plaintiffs are former Masco Tech, Inc. employees who, upon information and belief, were primarily from the "FormTech" division and who held restricted stock in the publicly traded company prior to its merger with the Heartland-controlled entity on or about November 28, 2000.

33.     On November 28, 2000, MascoTech was merged into Riverside Company, LLC, a Delaware limited liability company which was formed by Heartland for the sole purpose of facilitating the acquisition of MascoTech. At the time Heartland was currently the sole member of Riverside. After investment by Heartland and other co-investors in Riverside, Heartland continued to control Riverside.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

34.     The recapitalization merger was a "going private" transaction for MascoTech. MascoTech survived the merger. Each share of MascoTech common stock outstanding (other than restricted stock awards and those exchanged for preferred stock) was converted into the right to receive $16.90 in cash plus additional cash amounts from the net proceeds of the disposition of Saturn Electronics & Engineering Inc. stock.

35.     Following the merger, MascoTech was controlled by Heartland. Heartland, its co-investors, the continuing stockholders and the employees holding MascoTech restricted stock awards owned substantially all of the stock of MascoTech. Other stockholders no longer had any interest in MascoTech, including its future earnings or growth. MascoTech's common stock was no longer traded publically or listed on the New York Stock Exchange. In or about January 2001, MascoTech's name was changed to Metaldyne Corporation.

36.     The employees (including Plaintiffs and Class members) who had been holding restricted stock awards in MascoTech had their restricted stock awards cancelled immediately prior to the merger and were issued new "Substitute" awards in the new entity, for the same number of shares of the cancelled awards immediately after the merger. Even after receiving the Substitute awards, the Substitute award holders were minority stock holders, whose stock, even after vesting, would amount to only approximately three percent of the Company's common stock.

37.     The date of the merger, Plaintiffs' first installment of their Substitute awards vested, equal to 25% of their Substitute award. With respect to that first installment, Plaintiffs were not allowed to take cash for their award (or a majority of their award); but rather, Plaintiffs were forced to elect to receive all of the installment in the form of restricted shares of common stock, or to receive 60% of the installment in shares and 40% in cash. The balance of grants under the new Substitute awards vested ratably over three years on January 14, 2002, January 14, 2003, and January 14, 2004. The number of shares to be received

-10-

increased by 6% per annum and any cash to be received increased by 6% per annum from the $16.90 per share recapitalization consideration.

38.    Accordingly, Plaintiffs and other Class members were forced to take common stock in the new private company immediately after the merger.  For vesting dates after the merger, if Plaintiffs or Class members elected to receive any part of the installment in Restricted Shares, the number of shares he/she was entitled to receive on the applicable vesting date was increased by the following number of shares of MascoTech common stock:  .068 times the number of shares which otherwise vested on January 14, 2002;  .132 times the number of shares which otherwise vested on January 14, 2003; and .200 times the number of shares which otherwise vested on January 14, 2004.  If Plaintiffs or Class members elected to receive any part of the vesting installments in cash in lieu of shares, cash was paid at the following rates:  $18.05 per share at January 14, 2002;  $19.13 per share at January 14, 2003, and $20.28 per share at January 14, 2004.

39.    In taking control of the Company, Heartland, through the Individual Defendants, appointed the Individual Defendants to Metaldyne's board of directors and to controlling officer positions during the Class Period, as previously referenced herein.

40.    Heartland, through the Individual Defendants, also caused the company to enter into agreements with Heartland.  The company maintained a "monitoring agreement" with Heartland for an annual fee of four million dollars plus additional fees for financing and acquisitions under certain circumstances.  The Heartland monitoring agreement was allegedly based on a percentage of assets calculation with Heartland having the option of taking the greater of the calculated fee or four million dollars.  Heartland was also entitled to a one percent "transaction fee" in exchange for negotiating, contracting and executing certain transactions on behalf of Metaldyne, including transactions for sale-lease back arrangements and other financing.  In total, the approximate amount of fees the Company paid

to Heartland during Heartland's control of the Company during the Class Period was, upon information and belief, in excess of $30 million, which was paid in conflict with the interests of Plaintiffs and other Class members.

41.     Shortly before the vesting period in years 2002, 2003, and 2004, Plaintiffs and Class members received Notice letters from the Company, informing them that their Substitute awards were about to vest and informing them of their investment decision opportunity of either: 1). Electing to retain all of the installment in shares of Metaldyne common stock, which required Plaintiffs and other Class members to remit funds adequate to satisfy any of their withholding tax obligations; 2). Electing to retain 60% of the installment in shares and 40% of the installment in cash, where all or substantially all of the cash portion was withheld by the Company; or 3). Electing to receive 100% of the installment in cash in lieu of shares, where the Company withheld a portion of the cash installment sufficient to satisfy applicable tax obligations.   In the Notice letter, the Company did not disclose Heartland and the Individual Defendants' conflicts of interest represented by monitoring agreements and transaction fees. Instead, the Company enclosed a prospectus containing then-current Company information, as well as the Company's recent 10-K and 10-Q reports.   The Company also recommended that Plaintiffs and Class members read the MascoTech, Inc. 1991 Long Term Stock Incentive Plan and related prospectus.

42.     Out of all the incorporated documents that the Company referenced in the Notice letters, the only place where the monitoring agreements and transaction fees are referenced is in the late pages of the Company's 10-K annual reports under the title "Related Party Transactions".   In the 10-K for the fiscal year ended December 31, 2000 (the 10-K included with the Plaintiffs' Notice letters for their January 14, 2002 election) the document does not even disclose the agreements with Heartland.   Instead, in Part III, Item 13, on page 47 (of 52) the Company refers Plaintiffs to the Company's definitive Proxy Statement for its 2001 Annual Meeting of Stockholders, which was to be filed on our before April 29,

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

2001, and which purportedly contained the disclosure. In the 10-K for the fiscal year ended December 31, 2001 (the 10-K included with the Plaintiffs' Notice letters for their January 14, 2003 election) the disclosure was not made until section 25 of the document, on page 61 (of 70) and even this disclosure was not complete. In the 10-K for the fiscal year ended December 29, 2002 (the 10-K included with the Plaintiffs' Notice letters for their January 14, 2004 election) the disclosure was not made until Section 28 of the document, on page 72 (of 92), and even this disclosure was not complete. The force and effect of the above referenced disclosures is that these material facts were "buried" from Plaintiffs and other Class members.

43.     Unaware of the conflicts of interest between Heartland and the Individual Defendants, Plaintiffs and other Class members, during some or all of the years at issue, elected to retain all of the Substitute award installments in shares of Metaldyne common stock, which required Plaintiffs and other Class members to remit funds adequate to satisfy any of their withholding tax obligations. Specifically, Plaintiff Ziebron elected to retain the entire installment in shares for years 2002, 2003, and 2004. Plaintiff Vrana elected to retain the entire installment in shares for the year 2002.

44.     Had the Company's monitoring agreements and transaction fees with Heartland been adequately disclosed, Plaintiffs and other Class members would have known of Heartland's and Individual Defendants' conflict of interests and, given the uncharacteristic actions of the Heartland controlled company beginning immediately after Heartland's takeover, would not have elected to retain the installments in shares of common stock; instead, Plaintiffs and other Class members would have elected the guaranteed 100% cash payment for the shares at the per share price guaranteed at the time of the merger.

45.     Moreover, during the Class Period, the Heartland controlled Company went on a spending and transaction spree, most notably purchasing numerous subsidiaries, selling others, and selling many of

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

its buildings and equipment only to lease these assets back. These transactions resulted in millions of dollars going directly to Heartland and the Individual Defendants. Given the inherent conflict of interest created by same, the Company, through all Defendants, should have prominently disclosed the conflict of interest to Plaintiffs and other Class members at the time Plaintiffs and the Class members were making their investment decisions regarding the vesting Substitute awards.

46.     Upon taking control of the Company and during the Class Period, Heartland and the Individual Defendants immediately rejected the proven and successful systems at the Company, and instead began eroding away at the historically profitable forging business of the Company. For example, Defendants significantly compromised the company's maintenance system on the machines and equipment—the lifeblood of the company. The Defendants also discontinued long-successful machining programs previously adopted to ensure spare and replacement parts were readily available to keep the machines running on schedule.

47.     In addition, the company almost immediately began terminating valuable employees whose knowledge and skill were the foundation of the company's success prior to the merger.

48.     Defendants also changed the Company's accounting system from a division-controlled model to a model in which the corporate office assumed control of both the accounts receivable and payable. Upon information and belief, the Defendants did this so that they could control the Company's financial picture to its lenders and creditors and to paint a brighter picture through systematically understating expenses and overstating revenue.

49.     As the financial condition of the Company deteriorated, Heartland and the Individual Defendants sought to present a better financial picture to the company's creditors and investors. Group controllers and higher ranking officers with the company instructed mid-level financial employees to violate Generally Accepted Accounting Principles (GAAPs) and to even manipulate each division's

financial picture. During an SEC audit a group controller forced a company division controller to create documents to "cover up" irregularities which would have been exposed in the audit. This included, among other things, the creation of journal entries regarding accrued costs on pieces of Company equipment.

50.     The Company, through Heartland and Individual Defendants was certainly not "buying, building, and growing" as had been Defendants' often-repeated message shortly after the merger and throughout the Class Period, but instead, the Company was being positioned for a quick sale. In an effort to sell the Company the Defendants focused primarily on improving the Company's earnings before the deduction of interest, tax, and amortization expenses (EBITDA). As part of their plan, while the Company's financial condition continued to deteriorate, Heartland and the Individual Defendants were lining their own pockets by stripping cash out of the Company, through, among other things, the monitoring agreements and transaction fees.

51.     The combination discussed above would prove catastrophic, resulting in the ultimate sale of Metaldyne to Asahi Tec Corporation, a Japan-based chassis and powertrain component supplier. As part of the sale, a majority of the common stock holders, including Heartland and Individual Defendants, agreed to reinvest their proceeds in new Asahi Tec common equity. Moreover, Defendant Leuliette received approximately $11,388,811 in "parachute payments" and $4,170,114 in stockholder determined portions, while Defendant Stafeil received approximately $2,213,703 in parachute payments and $1,176,437 in stockholder determined portions. The remaining 3 % minority shareholders, including Plaintiffs and other Class members, were forced to sell their shares of Metaldyne Stock, receiving $2.57 in cash for each share, resulting in huge losses. These Plaintiffs and other Class members became aware of the amount they received after the merger on or about February 2007. The Plaintiffs and other Class

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

members were not even solicited for their consent to approve the merger as it had already been approved by Heartland.

52.    As alleged herein, Defendants acted with *scienter* in that Defendants knew or recklessly disregarded that the documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; and, knew or recklessly disregarded that such statements or documents would be issued or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Metaldyne, their control over, and/or receipt of information of Metaldyne's allegedly materially misleading misstatements and/or their associations with the company which made them privy to confidential proprietary information concerning Metaldyne, knew or recklessly disregarded the undisclosed facts adversely affecting Metaldyne, and most importantly, Plaintiffs and other Class members.   These Plaintiffs and other Class members were not savvy investors and were relying on the Defendants to be honest and forthright in protecting this important part of their retirement savings.

53.    Additionally, by knowing about or recklessly disregarding the statements or documents, as well as burying the material conflict of interest between the Plaintiffs/Class members and Heartland/Individual Defendants, the Defendants intended that Plaintiffs and other Class members would purchase the vesting restricted stock awards as opposed to electing to receive cash payments, payments which would adversely affect the liquidity of the Company, and thus, adversely affect Heartland and the Individual Defendants.

54.    On March 26, 2007, Defendant Stockman was indicted by the United States Attorney's Office for the Southern District of New York in connection with alleged securities fraud arising out of Defendant Stockman's role in the Collins & Aikman insolvency.   On May 16, 2007, Defendants

Stockman, Heartland, Heartland LLC, Becker, Hess, Tredwell, and Valenti, III, among others, were named as Defendants in a securities fraud civil lawsuit filed in the United States District Court for District of Delaware in connection with the Collins & Aikman insolvency. These events triggered Plaintiffs' investigation into Defendants' role in their losses alleged herein.

## COUNT I – VIOLATION OF SECTION 10(b) OF THE EXCHANGE ACT AGAINST RULE 10b-5 PROMULGATED THEREUNDER.

55.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

56.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to, and throughout the Class Period, did: (i) deceive the Plaintiffs and other Class members as alleged herein; (ii) artificially inflate and maintain the purchase price of Metaldyne securities; and (iii) cause Plaintiffs and other members of the Class to purchase Metaldyne securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Plaintiffs took the action set forth herein.

57.     Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading, facts which Defendants had a duty to disclose; and (c) engaged in acts, practices and a course of business which operated as a fraud and deceit upon the purchasers of the company's securities in an effort to maintain artificially high cash levels in the company, directly benefiting Defendants, in violation of Section 10(b) of the Exchange Act and Rule 10b-5 by inducing Plaintiffs and other Class members to elect Substitute stock awards as opposed to cash payments. Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

58. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalies of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information, including conflicts of interest, about the business, operations and future prospects of Metaldyne as specified herein.

59. Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to ensure Plaintiffs and other Class members of Metaldyne's value in performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Metaldyne and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the Plaintiffs and Class member purchasers of Metaldyne securities during the Class Period.

60. Defendants' primary liability, and controlling personal liability, arises from the following facts: (i) Defendants were directors and high-level executives of the company during the Class Period; (ii) Defendants were privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; and (iii) Defendants were aware of the company's dissemination of information to the investing Plaintiffs and other Class members which Defendants knew or recklessly disregarded as materially false and/or misleading.

61. Defendants had actual knowledge of the misrepresentations and/or omissions of material facts as set forth herein, or acted with reckless disregard for the truth in which they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

-18-

concealing Metaldyne's operating condition and future business prospects from the investing public and supporting the artificially inflated and/or misleading price of its securities.   As demonstrated by Defendants' overstatements and/or misstatements of the company's business operations and relationships throughout the Class Period, if Defendants did not have actual knowledge of the misrepresentations and omissions alleged, Defendants were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

62.     Plaintiffs     and     other     Class     members     justifiably     relied     on     Defendants' misrepresentations/omissions and as a direct and proximate result of Defendants' wrongful conduct Plaintiffs and other Class members suffered damages in connection with their stock purchases and forced sales during the Class Period.

## COUNT II – VIOLATIONS OF SECTION 20(a) OF THE EXCHANGE ACT AGAINST THE INDIVIDUAL DEFENDANTS

63.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

64.     The Individual Defendants acted as a controlling person of Metaldyne within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participating in and/or awareness of the Company's operations and/or intimate knowledge of the statements filed by the Company with the SEC and disseminated to the Plaintiffs and other Class members, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's

reports, press releases, public filing and other statements alleged by Plaintiffs to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

65.     In particular, the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, are presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein and exercised the same.

66.     As set forth above, Defendants violated Section 10(b) and Rule 10b-5 their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Metaldyne's, Heartland's and the Individual Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases and forced sales of the Company's securities during the Class Period.

## COUNT III – BREACH OF FIDUCIARY DUTY AGAINST THE INDIVIDUAL DEFENDANTS AND HEARTLAND

67.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein. This Claim for Relief is asserted against the Individual Defendants and Heartland.

68.     The Individual Defendants were all either directors and/or officers of the Company who owed fiduciary duties of loyalty, good faith and care to not only the Company, but also to the Plaintiffs and other Class members. As the Company's controlling shareholder and by virtue of its designation of a majority of the Company's directors, Heartland owed Plaintiffs and other Class members fiduciary duties of loyalty and care not to take actions to benefit itself to the detriment of the Plaintiffs and Class members. Heartland breached these fiduciary duties by causing, permitting, enabling, acquiescing and

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

aiding and abetting the fraudulent scheme detailed herein, including the diminishing of the value of the Company through numerous transactions as well as by paying itself millions of dollars in monitoring fees and transaction fees.

69. The Individual Defendants breached their duties of loyalty, good faith and care to the Plaintiffs and Class members by orchestrating, encouraging or utilizing various schemes and conduct as set forth herein which materially misstated the financial condition of the Company or misled Plaintiffs and other Class members regarding same, as well as diminished the value of the company.

70. Plaintiffs and other Class members suffered damages as a result of Heartland's and Individual Defendants' conduct, including but not limited to, losing the opportunity to accept cash awards for their vesting Substitute awards in years 2002, 2003, and 2004, as well as incurring substantial losses with respect to the forced sale of their Substitute awards which were acquired on November 28, 2000 as a result of the Heartland takeover. Such misconduct constitutes a breach of the duties of good faith, care and loyalty owed by these Defendants, as well as corporate waste.

## COUNT IV – UNJUST ENRICHMENT AGAINST THE INDIVIDUAL DEFENDANTS AND HEARTLAND

71. Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein. This Claim for Relief is asserted against the Individual Defendants and Heartland.

72. The Individual Defendants and Heartland personally benefitted by engaging in the conduct described above, including but not limited to causing Metaldyne to pay inflated prices for goods, services, and corporate acquisitions; violating the federal securities laws; making false and misleading statements and omissions; and taking millions of dollars a year in cash out of the Company through monitoring agreements and transaction fees which were in clear conflict of the interests of Plaintiffs and other Class members.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

73.     It is inequitable and unjust for the Individual Defendants and Heartland to have received and retained such benefits as are described above. The Individual Defendants and Heartland are obligated to disgorge monies and securities obtained improperly.

## COUNT V – SILENT FRAUD AGAINST THE INDIVIDUAL DEFENDANTS AND HEARTLAND

74.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein. This Claim for Relief is asserted against the Individual Defendants and Heartland.

75.     Defendants had a legal or equitable duty to make adequate disclosure of the conflicts of interest identified herein, particularly because of Defendants' fiduciary duty to Plaintiffs and other Class members.

76.     The Defendants' failure to adequately disclose the conflict of interest was for the purpose of inducing reliance by the Plaintiffs and Class members.

77.     This inadequate disclosure of the conflict of interest was misleading because of the Defendants' words and/or conduct in burying information regarding the conflict of interest in materials referenced in the Notice letters.

78.     Defendants' knew that inadequate disclosure of the conflict of interest would be misleading.

79.     The Plaintiffs and Class members acted in reliance on the misimpression created by the Defendants.

80.     The Plaintiffs and Class members suffered damages resulting from the inadequate disclose, including but not limited to, losing the opportunity to accept cash awards for their vesting Substitute awards in years 2002, 2003, and 2004, as well as incurring substantial losses with respect to the forced

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

sale of their Substitute awards which were acquired on November 28, 2000 as a result of the Heartland takeover.

## COUNT VI – CONVERSION AGAINST METALDYNE

81.    Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein. This Claim for Relief is asserted against Metaldyne.

82.    Prior to the recapitalization merger in November 2000, Plaintiffs and Class members had title to/owned shares of restricted stock in MascoTech, Inc, a publically traded company.

83.    Defendant wrongfully exerted dominion and control over Plaintiffs' property dispossessing Plaintiffs and Class members of the opportunity to cash out such Substitute awards and, instead, forcing Plaintiffs and other Class members to sell the awards in February 2007 for a significantly reduced value. Defendant acted without Plaintiffs' authority.

84.    Plaintiffs and Class members suffered damages resulting from the conversion, specifically losing money/property in the form of previously earned restricted stock which was wrongfully invested by Metaldyne into the Company, and ultimately converted in February 2007.

WHEREFORE, Plaintiffs prey for relief and judgment, as follows:

   a.    Determining that this action is a proper class action, designating Plaintiffs as co-lead Plaintiffs and certifying Plaintiffs as Class representatives under Rule 23 of the Federal Rules of Civil Procedure and Plaintiffs' counsel as Lead Counsel;

   b.    Awarding compensatory damages in favor of Plaintiffs and the other Class members against Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

c.    Awarding Plaintiffs and the Class their reasonable costs and expenses incurred in

this action, including counsel fees and expert fees; and

d.    Such other and further relief as the Court may deem just and proper.

DATED: January 14, 2009                    /s/  R. Jay Hardin

R. Jay Hardin (P35458)
Matthew L. Wikander (P65160)
SMITH HAUGHEY RICE & ROEGGE
Attorneys for Plaintiffs
202 E. State St., Ste. 100
Traverse City, MI  49684
231-929-4878
rhardin@shrr.com
(P35458)

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury.

DATED: January 14, 2009                    /s/  R. Jay Hardin

R. Jay Hardin (P35458)
Matthew L. Wikander (P65160)
SMITH HAUGHEY RICE & ROEGGE
Attorneys for Plaintiffs
202 E. State St., Ste. 100
Traverse City, MI  49684
231-929-4878
rhardin@shrr.com
(P35458)

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

SHRR 1474000v1

Exhibit A

## CERTIFICATION IN SUPPORT OF APPLICATION
## FOR NAMED AND/OR LEAD PLAINTIFF

Anthony Ziebron ("plaintiff") declares, as to the claims asserted under the federal securities laws, that:

1.     Plaintiff has fully reviewed the facts of the complaint filed in this action alleging violations of the securities laws and plaintiff is willing to serve as a lead plaintiff in this case and all other related cases that may be consolidated with it.

2.     Plaintiff did not purchase securities of Metaldyne Corporation at the direction of counsel or in order to participate in a private action under the federal securities laws.

3.     Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4.     During the Class Period, plaintiff has executed transactions in the securities of Metaldyne Corporation as follows: See Attached Schedule.

5.     In the last three years, plaintiff has not sought to serve as a representative party on behalf of a class in an action filed under the federal securities laws, except as indicated herein.

6.     Plaintiff will not accept payment for serving as a lead plaintiff beyond his *pro rata* share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: January _14_, 2009

_____
Anthony Ziebron, Plaintiff

MARK A. VRANA
Notary Public, State of Michigan
County of Oakland
My Commission Expires Aug. 24, 2014
Acting in the County of _MACOMB_

## SCHEDULE

|          |      | Shares  | Price per share |
|----------|------|---------|-----------------|
| 11/28/00 | Buy  | 568.75  | $16.90          |
| 01/14/02 | Buy  | 607.00  | $18.05          |
| 01/14/03 | Buy  | 643.00  | $19.13          |
| 01/14/04 | Buy  | 682.50  | $20.28          |
| 01/11/07 | Sell | 2501.25 | $2.57           |

Exhibit B

## CERTIFICATION IN SUPPORT OF APPLICATION
## FOR NAMED AND/OR LEAD PLAINTIFF

James Vrana ("plaintiff") declares, as to the claims asserted under the federal securities laws, that:

1.      Plaintiff has fully reviewed the facts of the complaint filed in this action alleging violations of the securities laws and plaintiff is willing to serve as a lead plaintiff in this case and all other related cases that may be consolidated with it.

2.      Plaintiff did not purchase securities of Metaldyne Corporation at the direction of counsel or in order to participate in a private action under the federal securities laws.

3.      Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4.      During the Class Period, plaintiff has executed transactions in the securities of Metaldyne Corporation as follows:  See Attached Schedule.

5.      In the last three years, plaintiff has not sought to serve as a representative party on behalf of a class in an action filed under the federal securities laws, except as indicated herein.

6.      Plaintiff will not accept payment for serving as a lead plaintiff beyond his *pro rata* share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: January **14**, 2009

James Vrana, Plaintiff

MARK A. VRANA
Notary Public, State of Michigan
County of Oakland
My Commission Expires Aug. 24, 2014
Acting in the County of **MACOMB**

## SCHEDULE

|          |      | Shares | Price per share |
|----------|------|--------|-----------------|
| 11/28/00 | Buy  | 399.75 | $16.90          |
| 01/14/02 | Buy  | 426.00 | $18.05          |
|          |      |        |                 |
|          |      |        |                 |
| 01/11/07 | Sell | 825.75 | $2.57           |